**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 08-01814-JW |
| | Chapter 11 |
| Maude H. Henderson and Daniel S. Henderson, IV Irrevocable Trust fbo William M. Worthy, III, et al., | ORDER |
| Debtor(s). | |

FILED
at ___ O'clock & ___ min ___M
MAY 0 7 2008
United States Bankruptcy Court
Columbia, South Carolina (26)

ENTERED
MAY 7 2008
L.O.

This matter comes before the Court on motion of First Citizens Bank ("First Citizens") for relief from the automatic stay ("Motion"). This Court has jurisdiction pursuant to 28 U.S.C. § 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K), and (O). Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 7052, the Court makes the following Findings of Fact and Conclusions of Law.[1]

### FINDINGS OF FACT

1. Maude H. Henderson and Daniel S. Henderson, IV Irrevocable Trust ("Debtor") filed a petition for relief under chapter 11 of the Bankruptcy Code on March 28, 2008.[2] The petition is signed by William Madison Worthy, II ("Worthy") for Debtor. Debtor's petition indicates that it is a single asset real estate case as defined by 11 U.S.C. § 101(51B).

2. Worthy is a trustee for Debtor, which is a trust formed for the benefit of Worthy's five children.

3. The only asset of Debtor is real property located at 732 Springs Avenue, Pawley's Island, South Carolina ("Property").

---

[1] To the extent any Findings of Fact constitute Conclusions of Law, they are adopted as such. To the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

[2] By separate motion, First Citizens has moved to dismiss this case on grounds that Debtor is not eligible to be a debtor under Title 11.

4. Debtor holds approximately a seventy percent interest in the Property. Worthy and his wife equally share the remaining interest in the Property.

5. First Citizens holds a first and second mortgage in the Property. The debt owed to First Citizens exceeded two million dollars as of the date of the hearing on the Motion.

6. Prior to the petition in this case, a South Carolina state court appointed a receiver to collect rents and manage the Property for the benefit of creditors. Worthy obtained funds being held in trust by the receiver and appropriated those funds to his personal use. Worthy is subject to a rule to show cause in state court with regard to his failure to return the funds he appropriated.

7. The Property was subsequently sold through a public foreclosure sale on November 5, 2007. First Citizens purchased the Property at the foreclosure sale.

8. Two days prior to the foreclosure sale becoming final, Worthy filed a petition under chapter 11 of the Bankruptcy Code (the "Worthy Case"). The filing of the Worthy Case stayed the foreclosure and First Citizens' ability to take title to the Property.

9. In the Worthy Case, First Citizens moved for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (2).

10. Following an evidentiary hearing, the Court granted First Citizen's motion for relief from stay in the Worthy Case on January 29, 2008. The Court found that Worthy was unable to provide adequate protection, there was no equity in the Property, and the Property was not necessary for an effective reorganization that was within reasonable prospect.[3]

11. Following the lifting of the automatic stay in the Worthy Case but prior to the petition date in this case, First Citizens resumed its efforts in state court to sell the Property

---

[3] Worthy moved to dismiss the Worthy Case and that motion was granted on March 17, 2008.

2

through foreclosure. It re-advertised the foreclosure sale and the Property was again sold at a public foreclosure sale to First Citizens on March 3, 2008.

12. Five days prior to the second foreclosure sale becoming final, Debtor filed the petition in this case which again stayed the foreclosure and First Citizens' ability to take title to the Property.

13. Debtor's schedules indicate that the value of the Property is $2,250,000.00.

14. Debtor's amended schedules filed April 11, 2008 indicate that First Citizens and Georgetown County are the only creditors of Debtor.

15. Debtor's tax returns, schedules, and statement of financial affairs indicate Debtor is not currently generating income from the Property and that the Property has not generated income to Debtor for the two-year period prior to the petition date.

16. First Citizens filed the Motion on April 4, 2008. First Citizens seeks relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (2) and seeks *in rem* relief from the automatic stay for Debtor's bad faith conduct.[4]

17. Debtor opposes the Motion. Debtor contends that First Citizens is adequately protected and that Debtor can make payments to bring the debt current.

18. First Citizens proffered that adequate protection would equal the debt payment to it for both mortgages, which would be $17,887.30 per month[5] if it re-amortized a portion of the debt over a fifteen year period at 6.56% per annum. Debtor did not dispute this proffer and asserted that it was capable of making such monthly payments to First Citizens.

---

[4] First Citizen's Motion characterizes its request for *in rem* relief as a request for an order granting the motion for relief from stay with prejudice.

[5] The debt payment assumes that First Citizens is willing to re-amortize the first mortgage, which is currently due in full.

3

19. First Citizens presented testimony of Walter Krask, an appraiser. First Citizen's appraiser presented credible and persuasive testimony that the Property is currently worth $2 million based upon an appraisal he performed April 22, 2008.[6] Debtor failed to offer specific testimony or other evidence as to the value of the Property.[7]

20. Worthy testified that the Property generated rental income in the past two years and that he is able to pay $18,000.00 per month from his personal income to service the debt to First Citizens. Worthy also testified that he estimates that the Property can generate $70,000.00 to $85,000.00 per year in rental income and that Debtor has entered into a rental agreement with a company that will lease the Property and pay the proceeds of the rental income to First Citizens. Debtor has failed to submit an application required by 11 U.S.C. § 327 to obtain approval of this Court to hire a professional to lease the Property. Worthy failed to offer convincing evidence to substantiate his claim of a lease agreement or his claim of sufficient personal income to make payments in the amount of $18,000.00 per month.[8] Worthy acknowledged that Debtor does not produce sufficient income to make the debt service payments to First Citizens. Worthy testified that Debtor's present intentions are to keep the Property rather

---

[6] In the Worthy Case, the parties merely presented older appraisals indicating that the Property was worth $2.2 million. The Court found in the Worthy Case that the Property was worth $2.2 million, for purposes of the stay relief motion in that case, based upon these older appraisals and Worthy's certification of facts indicating that the Property was worth $2.2 million.

[7] Debtor attempted to impeach the credibility of First Citizens' appraiser with older appraisals performed in previous years. Debtor did not lay a foundation for the introduction of these older appraisals into evidence and therefore the Court does not give weight to the valuation of the Property in this older appraisals. Debtor also attached certain appraisals to his certification of facts in this matter but these appraisals were also not introduced into evidence and therefore cannot be considered as evidence for purposes of the hearing on the Motion. See In re Morysville Body Works, Inc., 86 B.R. 51, 52 (Bankr. E.D. Pa. 1988) (finding that an appraisal, attached to a motion, does not serve to introduce the exhibit into evidence) (citing In re Paolino, 72 B.R. 555, 557 n. 5 (Bankr. E.D. Pa. 1987); aff'd 75 B.R. 553 (E.D.Pa.1987)); In re Cook, C/A No. 02-00806-W, slip op. (Bankr. D. S.C. May 3, 2002) ("Debtors assert that they have an appraisal to substantiate their belief that the residence's value is $157,000.00; however, at the hearing, no appraiser was present. Because there was no expert to introduce the appraisal, the appraisal was not admitted into evidence.").

[8] The success of the Worthy Case was also based upon anticipated substantial income by Worthy, which was also not substantiated by credible and convincing evidence.

than to sell it, as was his intent in the Worthy Case, and to use his income and the rental income to pay First Citizens.

## CONCLUSIONS OF LAW

11 U.S.C. § 362(d)(1) and (2) allow parties to seek relief from the automatic stay for cause, including lack of adequate protection, and if there is no equity in the Property and the Property is not necessary for an effective reorganization.[9] First Citizens bears the burden of proof on the validity of its lien, the amount of its debt, and Debtor's lack of equity.[10] See 11 U.S.C. § 362(g)(1); In re Worthy, C/A No. 07-06712-W, slip op. (Bankr. D.S.C. Jan. 29, 2008). Debtor bears the burden of proof on all other issues including lack of cause, the existence of adequate protection, and the necessity of collateral for an effective reorganization that is within reasonable prospect. See 11 U.S.C. § 362(g)(2). In appropriate circumstances, the Court may, on motion of a party or *sua sponte*, grant the movant *in rem* relief when there is evidence of a bad faith effort to delay a creditor with a futile bankruptcy filing or other evidence that indicates *in rem* relief is necessary to prevent abuse of process. See 11 U.S.C. § 105(a) (broadly providing for the right of this court to issue necessary and appropriate orders and to prevent abuse of process); In re 2001, Inc., C/A No. 04-15139-W, slip op. (Bankr. D.S.C. Jan. 6, 2005) (ordering *in rem* relief for a debtor's efforts to delay eviction through serial filings with co-tenants); In re Pinckney, C/A No. 06-01094, slip op. (Bankr. D.S.C. Apr. 28, 2006) (finding that the bankruptcy court has sufficient authority under its inherent authority recognized in In re Weiss, 111 F.3d 1159 (4th Cir. 1997) to order *in rem* relief).

---

[9] Debtor incorrectly argued that the standard for stay relief is irreparable harm.

[10] In this case, Debtor has not disputed the validity of the lien or the amount of the debt and the foreclosure would appear to be *res judicata* on these issues. See In re Ford, C/A No. 05-44958-W, slip op. at 4-5 (Bankr. D.S.C. Mar. 10, 2006) (finding a foreclosure was *res judicata* as to the validity of the lien and the amount of the debt, which could not be challenged in bankruptcy via an objection to claim).

I.  **First Citizens is Entitled to Relief From Stay Pursuant to 11 U.S.C. § 362(d)(1)**

Cause to lift the automatic stay includes lack of adequate protection or any other grounds for cause, including bad faith. See In re Brown, C/A No. 01-12506-W, slip op. (Bankr. D. S.C. Jun. 4, 2002) (finding cause to lift the automatic stay for a debtor's bad faith). "The phrase 'adequate protection' is defined in § 361 in sufficiently broad terms that courts and commentators have uniformly concluded that such protection may be provided by a creditor's equity cushion...." NationsBank of Virginia, N.A. v. DCI Publishing of Alexandria, Inc., 160 B.R. 538, 540 (E.D. Va. 1993). A creditor may also be adequately protected by periodic payments sufficient to compensate the creditor for the diminution in value of the creditor's collateral. See In re Dunes Hotel Associates, 188 B.R. 162, 173 (Bankr. D.S.C. 1995) (discussing adequate protection); In re James River Associates, 148 B.R. 790, 797 (E.D. Va. 1992) (finding cause to lift the automatic stay when there is a lack of equity cushion and a failure to make monthly payments due to creditor). Debtor has failed to meet its burden of proof that there is a lack of cause to lift the automatic stay.

First Citizens is not adequately protected by the value of the Property. Debtor failed to offer any persuasive evidence that First Citizens is now adequately protected by the value of the Property a mere three months after the stay was lifted in the Worthy Case for lack of adequate protection.[11] The credible evidence from First Citizens' appraiser indicates that First Citizens is in a worse position in this case since the value of the Property has declined and the debt owed to it has increased. Based upon the credible and persuasive testimony from First Citizens' appraiser, the Court finds that the Property is worth $2 million, which is less than the amount of

---

[11] Debtor offered the general testimony of Worthy about a previous appraisal performed on the Property, the real estate taxes owed, and his general opinion that the Property is appreciating; however, it introduced no specific evidence indicating the present value of the Property. First Citizens introduced a 2006 appraisal by Walter Krask indicating that the Property was valued at $2.2 million at that time; however, the Court does not find this to be persuasive evidence as to the current value of the Property considering the recent appraisal by Walter Krask.

the agreed upon debt. Therefore, the Court finds that the Property's value does not adequately protect First Citizens. See In re Kinard, C/A No. 01-03621-W, slip op., 2001 WL 1806039 (Bankr. D. S.C. Nov. 21, 2001) (granting relief from stay for lack of adequate protection even though the debtor believed the property would appreciate during the case).

First Citizens is also not adequately protected by the assurance of payment. Considering the accrual of real estate taxes, insurance costs, the interest on such a significant indebtedness,[12] and the depreciation of the Property, the Court finds that adequate protection payments would be in the range of $15,000.00 per month. Worthy admitted that the Debtor does not and cannot generate sufficient income to make such an adequate protection payment or the debt payments that would be required in a chapter 11 plan. In light of Debtor's inability to adequately protect First Citizens, Debtor appears to be relying on voluntary contributions from Worthy to make the adequate protection payments for it. Although there appears to be no prohibition on non-debtor parties making adequate protection payments for a debtor, such payments must be within reasonable prospect. See In re Young, 2007 WL 128280 (Bankr. S.D. Tex. Jan. 10, 2007) (conditioning the termination of the stay on adequate protection payments made by non-debtor family members); In re Bigby, C/A No. 05-45006-W, slip op. (Bankr. D.S.C. Dec. 7, 2005) (finding that debtors must demonstrate that the non-debtor is capable of making voluntary contributions in order to rely on such contributions for purposes of their bankruptcy). In this case, there is no persuasive evidence that Worthy has the ability to or will definitely make such adequate payments to First Citizens.[13] See In re LDN Corp., 191 B.R. 320, 324 (Bankr. E.D. Va.

---

[12]  It appears that the amount of interest on a commercially reasonable loan would exceed $11,000.00 per month.

[13]  Although Worthy testified that he now makes sufficient income to make such payments to First Citizens, his credibility is weakened by his admitted misappropriation of funds from the receiver and the failure of his personal bankruptcy in which this Court found that the ability of Worthy to confirm a chapter 11 plan was not within reasonable prospect. His credibility is also weakened by his admission in this case that his sworn schedules in the Worthy Case are inaccurate and the inconsistencies between Worthy's testimony regarding Debtor's earnings and

Case 08-01814-jw    Doc 37    Filed 05/07/08    Entered 05/07/08 11:59:54    Desc Main
Document    Page 8 of 15

1996) (finding "[c]ause may exist by the failure of the debtor to pay its secured creditor for a substantial period of time, whether prepetition or postpetition, coupled with a substantially unsupported proposal to satisfy the secured debt...."). To date, Worthy has tendered to First Citizens two checks of only $3,500.00 each, a sum much less than that necessary to adequately protect First Citizens' interest. Therefore, the Court finds that the Motion should be granted pursuant to 11 U.S.C. § 362(d)(1) for lack of adequate protection.[14]

**II.    First Citizens is Entitled to Relief From Stay Pursuant to 11 U.S.C. § 362(d)(2)**

First Citizens has presented persuasive evidence that there is no equity in the Property, in as much as the debt exceeds the value of the Property. Debtor has also failed to demonstrate that the Property is necessary for an effective reorganization. In order for property to be necessary for an effective reorganization, reorganization must be within reasonable prospect. See United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 376 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); Worthy, slip op. at 4. Worthy testified that Debtor intends to keep the Property and lease it. However, Debtor has failed to obtain Court approval to retain the professional it purports to have hired to lease the Property and admits that the Property cannot generate sufficient income to pay First Citizens. As previously found, Debtor's reliance on the personal income of a non-debtor does not appear to make reorganization within reasonable prospect in this case, considering that the income has not been substantiated beyond Worthy's testimony, which this Court does not find convincing considering the recent finding of this Court in the Worthy Case that Worthy also lacked the ability to reorganize and pay the debt

---

the sworn schedules in this case, signed by Worthy, and Debtor's tax returns, which each indicate Debtor has had no income for the past two years. Debtor and Worthy failed to offer independent evidence to substantiate Worthy's claim of his ability to make debt payments to First Citizens.

[14]    The Court would also lift the stay for cause due to Debtor's bad faith, as discussed herein.

to First Citizens. Therefore, the Court finds that the elements of 11 U.S.C. § 362(d)(2) are met and that the automatic stay should be lifted as to the Property.

### III.    The Court Grants First Citizens *In Rem* Relief

First Citizens' moved to grant its Motion "with prejudice" to prohibit Debtor or any other party from filing a bankruptcy petition for a period of 180 days, which would give rise to an automatic stay covering the Property. This request would grant *in rem* relief for First Citizens to prohibit the Property from being protected by the automatic stay in subsequent cases by Debtor or any non-debtor.[15] This Court may also *sua sponte* take action to prevent abuse of process, including granting a creditor *in rem* relief. See 11 U.S.C. § 105(a); In re Gonzalez-Ruiz, 341 B.R. 371, 385 (1st Cir. B.A.P. 2006) (construing a creditor's request for "such other relief as is just and proper" as grounds to grant *in rem* relief); Pinckney, slip op. at 3-4 (ordering *in rem* relief *sua sponte*). The authority of the Court to grant *in rem* relief stems from its broad powers under 11 U.S.C. § 105(a) to issue orders necessary to carry out provisions of the Bankruptcy Code and prevent abuse of process. See In re Yiman, 214 B.R. 463, 466 (Bankr. D. Md. 1997). This Court has jurisdiction to issue *in rem* relief since it has subject matter jurisdiction over the Property by virtue of 11 U.S.C. § 541. See In re Lord, 325 B.R. 121, 130 (Bankr. S.D.N.Y. 2005); In re Price, 304 B.R. 769, 773 (Bankr. N.D. Ohio. 2004).

"In order to appropriately grant *in rem* relief, the record must clearly demonstrate an abuse of the bankruptcy process through multiple filings with the sole purpose of frustrating the legitimate efforts of creditors to recover their collateral." Price, 304 B.R. at 773. This Court and

---

[15] Congress has codified the right to *in rem* relief in 11 U.S.C. § 362(d)(4). First Citizens did not specifically plead for relief under 11 U.S.C. § 362(d)(4); however, Debtor did not challenge the sufficiency of First Citizens' pleadings and acknowledged that First Citizens was seeking *in rem* relief. Moreover, "Congress gave no indication in enacting § 362(d)(4) that it intended to prevent bankruptcy courts from employing 11 U.S.C. § 105(a)... to enter orders, when necessary or appropriate, to prevent the harm arising from abusive filings. If anything, the 2005 amendments evidence a congressional intent that the courts crack down on abusive filings by debtors". In re McCray, 342 B.R. 668, 670 (Bankr. D.D.C. 2006).

9

others have considered the following circumstances that would warrant *in rem* relief: 1) strategic filing of bankruptcy petitions to prevent collection; 2) multiple bankruptcy petitions by multiple parties to protect common property; 3) lack of evidence of changed circumstances between filings; and 4) inability to fund a plan. See id. at 774; 2001, Inc., slip op. at 6-7. In this case, there is a clear demonstration of an abuse of the bankruptcy process by Debtor and Worthy's orchestrated efforts to delay foreclosure and abuse the bankruptcy process.

Both this case and the Worthy Case were strategically filed on the eve of the foreclosure sales becoming final. Both cases were filed to protect a common asset. See In re Hartley, 187 B.R. 506, 507 (Bankr. D.S.C. 1995) (construing filings by multiple parties as filings by a single entity when done to protect a common asset); In re Brown, C/A No. 01-12506-B, slip op. (Bankr. D.S.C. Jun. 4, 2002) (finding that separate filings could be viewed as an indicia of bad faith). Worthy, in his capacity as the trustee of Debtor, has used the Debtor to obtain a stay of the foreclosure, which is relief he is not eligible to receive in his individual capacity. See 11 U.S.C. § 109(g)(2); In re Éclair Bakery Ltd., 255 B.R. 121, 137-38 (Bankr. S.D.N.Y. 2000) (finding "cause" to lift the automatic stay for bad faith when the bankruptcy case of the debtor's sister company was dismissed with prejudice and debtor filed to delay collection efforts against it and its' sister company and circumvent the requirements of the prejudice order). There is no persuasive evidence of a favorable change in circumstances that would warrant the protection of the automatic stay as to the Property. The evidence indicates that the Property is less valuable than it was in the previous case and First Citizens has continued to accrue attorney's fees and costs as a result of the multiple delays of the foreclosure and the proceedings in this Court. Its debt is also rapidly growing through the accrual of interest, attorney's fees, costs, and unpaid property taxes. Debtor's evidence clearly indicates that it lacks the ability to fund a plan capable

Document      Page 11 of 15

of paying First Citizens and that it cannot offer First Citizens adequate protection. Although it relies on voluntary contributions from Worthy, this Court has previously found that such contributions have not been sufficiently substantiated and that any reorganization is not within reasonable prospect. Therefore, the Court grants First Citizens *in rem* relief, either pursuant to its Motion or *sua sponte*, and orders that the filing of any bankruptcy petition in any jurisdiction within the six-month period following the entry of this Order shall not operate to stay First Citizens' efforts to collect its debt and foreclose on the Property.

Finally, the Court finds that Debtor's bad faith also warrants the *in rem* relief. See McCray, 342 B.R. at 670 (finding that a debtor's bad faith warrants *in rem* relief). The Fourth Circuit has found that filing a case in good faith is an implicit prerequisite to the right to obtain the equitable relief offered by the Bankruptcy Code. See Carolin Corp. v. Miller (In re Carolin Corp.), 886 F.2d 693, 698 (4th Cir. 1989). Under the Carolin standard, bad faith is demonstrated by a debtor's subjective intent and the objective futility of the bankruptcy case. See id. at 700-701 (discussing bad faith in the context of the threshold dismissal of a chapter 11 case).

"Subjective bad faith means an intent by the debtor to abuse the protections of Chapter 11 and to cause hardship or delay to creditors, without any real ability to reorganize." See In re Belair 301-50 S.W. Quadrant Commercial Properties, Inc., 972 F.2d 338, 1992 WL 200849, *3 (4th Cir. 1992) (unpublished). After considering Carolin, this Court set forth a non-exclusive list of factors that it may consider in determining subjective bad faith:

1. The debtor has one asset;
2. Secured creditors' liens encumber the asset;
3. There are generally no employees except for the principals and there is no ongoing business activity;
4. The debtor has little or no cash flow and no available sources of income to sustain a plan of reorganization or make adequate protection payments;
5. There are few, if any, unsecured creditors whose claims are relatively small;
6. There are allegations of wrongdoing by the debtor or its principals;

11

7. The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of secured creditors to enforce their rights;
8. The debtor is afflicted with the "new debtor syndrome" in which a one asset entity is created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors;
9. There is no realistic possibility of reorganization of the debtor's business;
10. The reorganization essentially involves a two-party dispute; and
11. Bankruptcy offers the only possibility of forestalling loss of the property.

See In re Dunes Hotel Associates, 188 B.R. 162, 171-72 (Bankr. D.S.C. 1995);

Debtor has only one asset that is fully encumbered by First Citizens' lien. Debtor does not indicate that it has any employees. Debtor's sworn schedules and tax returns indicate that it has had no cash flow for two years, which contradicts Worthy's testimony that Debtor has earned some rental income during the past two years. This income is not sufficient to sustain a plan of reorganization to pay First Citizens and there appears to be no realistic ability of Debtor to reorganize. There are no unsecured creditors and this case is essentially a two-party dispute between the owners of the Property, which includes Worthy and Debtor, and First Citizens, given that the only other creditor, which is owed real property taxes, will be paid through foreclosure.[16] The timing of this bankruptcy and the Worthy Case were strategically aimed at forestalling foreclosure and hindering the collection efforts of First Citizens. Bankruptcy appears to be the only possibility for Debtor and the co-owners to forestall the inevitable loss of the Property. There are sufficient admissions of wrongdoing by Debtor's principal. Worthy, as trustee of Debtor, has admitted appropriating funds obtained by a court appointed receiver, for the benefit of creditors, to his personal use and to inaccuracies in the sworn schedules in the Worthy Case. Finally, it appears that Debtor has made inconsistent representations to this Court. The schedules and statement of financial affairs in this case, signed by Worthy under penalty of perjury, and Debtor's tax returns, each indicate no income for Debtor for the past two years and

---

[16] Debtor also amended its schedules to indicate it owed income taxes, which appears to be inconsistent with its tax returns for 2006 and 2007 that indicate no taxable income.

are inconsistent with Worthy's testimony that Debtor has earned rental income during the past two years.[17] Considering the Dunes factors and the totality of the circumstances, there is clear evidence in the record that this case was subjectively filed in bad faith.

There is also clear evidence that this case is objectively futile. "The objective futility inquiry is designed to insure [sic] that there is embodied in the petition 'some relation to the statutory objective of resuscitating a financially troubled debtor.'" Carolin, 886 F.2d at 701 (internal citation omitted). Worthy admitted that Debtor cannot generate sufficient income to pay the debt to First Citizens, which would likely be necessary to fund a chapter 11 plan. There is no equity cushion in the Property, so any sale or refinance of the Property would not pay creditors in full. See In re Beam, C/A No. 07-06773-W, slip op. at 14 (Bankr. D.S.C. Feb. 26, 2008) (discussing lack objective futility when there is a sufficient equity cushion). Finally, any claim that Worthy has the means to fund a plan for Debtor, assuming this voluntary contribution would meet confirmation standards, has not been substantiated by convincing evidence, which this Court finds necessary given Worthy's previous testimony and the previous finding of this Court that Worthy lacked the means to fund his own chapter 11 plan to pay for the debt on the Property. Therefore the Court finds that this case was filed in bad faith and that this bad faith warrants *in rem* relief for First Citizens.[18]

### IV.    Waiver of 4001(a)(3) is Denied

Lastly, First Citizens moved to waive Fed. R. Bankr. P. 4001(a)(3), which provides a temporary stay of an order lifting the automatic stay similar to that available under Fed. R.

---

[17]    Debtor has also indicated various inconsistent values of the Property in its submissions to this Court (i.e. $2.25 million in the original schedules, $2.5 million in the certification of facts, and $2.8 million in the amended certification of facts filed on the eve of the hearing on the Motion). It introduced no evidence to substantiate these values.

[18]    The Court finds that bad faith should be imputed to any other co-owners of the Property considering the orchestrated efforts of the Property's owners to forestall collection efforts by First Citizens.

Bankr. P. 8005. This rule was added by the 1999 amendments to the Federal Rules of Bankruptcy Procedure and provides a temporary breathing spell for a debtor to appeal and obtain a stay pending appeal thereby avoiding the potential devastating consequences that stay relief can have on the success of the bankruptcy case. See In re A Partners, LLC, 344 B.R. 114 (Bankr. E.D. Cal. 2006) (discussing the policy reasons behind Fed. R. Bankr. P. 4001(a)(3)).

This Court has not identified any clear standard for determining whether the rule should be waived when the debtor, as in this case, contests the waiver of the rule. See In re Thomas, 364 B.R. 207, 210 (Bankr. E.D. Va. 2007) (finding "[t]o remain faithful to the rule, it should only be waived when there is a good reason to waive it"). In the absence of controlling precedent, this Court believes that, when contested, the rule should be waived only when there is a clear showing by the movant of equitable reasons that would warrant the waiver of the presumptive stay afforded to a debtor by the rule. See Éclair Bakery, 255 B.R. at 143, n.42 (waiving the stay of Fed. R. Bankr. P. 4001(a)(3) based upon the debtor's unclean hands). Considering the requirements necessary to obtain a stay pending appeal, it follows that First Citizens, as the movant, must demonstrate countervailing factors that would mitigate against such a stay to obtain a waiver of the temporary stay of Fed. R. Bankr. P. 4001(a)(3). See 9 Collier on Bankruptcy ¶ 4001.04A, at pp. 4001-20 – 4001-21 (Lawrence P. King et al. eds., 15th ed. Revised 2007) (stating that the bankruptcy court should rarely grant a request to waive 4001(a)(3), if contested, unless there is a showing of "strong countervailing factors" that would not warrant a stay pending appeal). While the Court recognizes that Debtor and other owners of the Property have repeatedly delayed the completion of the foreclosure by First Citizens, granting *in rem* relief adequately addresses that circumstance. Though it does not appear that Debtor would be substantially harmed by a waiver of the stay- such as in such instances where

any appeal would become moot if the stay is waived- it also does not appear that First Citizens would be irreparably injured by leaving the stay in place temporarily. See 9 Collier on Bankruptcy ¶ 4001.04A, at p. 4001-20 (stating that Fed. R. Bankr. P. 4001(a)(3) helps avoid an appeal becoming moot following the lifting of the automatic stay). The Property also does not appear to be at risk for loss or destruction and First Citizens, a large financial institution, will not suffer great harm if its collection efforts are delayed for an additional ten days. Therefore, the Court denies First Citizens' request to waive Fed. R. Bankr. P. 4001(a)(3).

## CONCLUSION

Based upon the foregoing, the Motion is granted and the automatic stay is lifted pursuant to 11 U.S.C. § 362(d)(1) and (2). First Citizens is granted *in rem* relief, pursuant to the Motion or this Court's *sua sponte* authority under 11 U.S.C. § 105(a), and the filing of any bankruptcy petition in any jurisdiction within the six month period following the entry of this Order shall not operate to stay First Citizens' efforts to collect its debt and foreclose on the Property.

**AND IT IS SO ORDERED.**

_____
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
May 7, 2008

15